# Exhibit A

```
 1                 UNITED STATES DISTRICT COURT
 2                 WESTERN DISTRICT OF NEW YORK
 3
 4
 5    IN RE: FISHER-PRICE ROCK 'N     )
      PLAY SLEEPER MARKETING,         )
 6    SALES PRACTICES, AND            )  MDL No. 1:19-md-2903
      PRODUCTS LIABILITY              )
 7    LITIGATION                      )
                                      )
 8    _____ )
 9
10
11         VIDEOTAPED DEPOSITION VIA VIDEOCONFERENCE OF
12                     COLIN B. WEIR
13                 Tisbury, Massachusetts
14                 Thursday, March 11, 2021
15
16
17
18
19
20
21    Reported by:
      Lynda L. Fenn, CSR, RPR
22    CSR No. 12566
      JOB No. 4485309
23
24
25
                                                      Page 1
```

```
 1              UNITED STATES DISTRICT COURT
 2              WESTERN DISTRICT OF NEW YORK
 3
 4
 5   IN RE: FISHER-PRICE ROCK 'N    )
     PLAY SLEEPER MARKETING,        )
 6   SALES PRACTICES, AND           )  MDL No. 1:19-md-2903
     PRODUCTS LIABILITY             )
 7   LITIGATION                     )
                                    )
 8   _____)
 9
10
11          VIDEOTAPED DEPOSITION VIA VIDEOCONFERENCE
12          of COLIN B. WEIR, taken on behalf of
13          Defendants, Tisbury, Massachusetts, at 11:06
14          a.m. and ending at 7:24 p.m., Thursday, March
15          11, 2021, reported by Lynda L. Fenn,
16          CSR No. 12566, Certified Shorthand Reporter
17          within and for the State of California,
18          pursuant to notice.
19
20
21
22
23
24
25
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | restriction, I would have to give that some thought. | 10:30:40 |
| 2 | There are certainly a few instances, but if you are | 10:30:44 |
| 3 | asking when was I the primary person responsible, it | 10:30:47 |
| 4 | would be dozens at this point. | 10:30:52 |
| 5 | Q   In litigation -- let me narrow it a little | 10:30:58 |
| 6 | bit to litigation. | 10:31:01 |
| 7 | In the litigation context how many times | 10:31:02 |
| 8 | have you, yourself, designed a conjoint survey, as | 10:31:04 |
| 9 | opposed to another expert that may have been retained | 10:31:08 |
| 10 | in the action to do that work. | 10:31:12 |
| 11 | A   Maybe three or four times. | 10:31:14 |
| 12 | Q   In what cases were those three or four | 10:31:18 |
| 13 | times that you designed the conjoint survey? | 10:31:21 |
| 14 | A   There was a case involving Craftsman, a | 10:31:24 |
| 15 | case involving New Balance, a case involving -- I | 10:31:31 |
| 16 | think it was maybe Maytag.  There's the instant | 10:31:40 |
| 17 | matter.  I guess that gets us to four. | 10:31:44 |
| 18 | Well, there was one more.  There's a case | 10:31:49 |
| 19 | involving Walmart. | 10:31:52 |
| 20 | There may be one or two others, but that's | 10:31:57 |
| 21 | what's coming to mind as I sit here. | 10:31:59 |
| 22 | Q   Are any of those matters listed on your CV? | 10:32:03 |
| 23 | A   I know at least some of them will be within | 10:32:09 |
| 24 | the last four years. | 10:32:12 |
| 25 | Q   So if you could point me out which of those | 10:32:12 |

Page 89

| | | |
|---|---|---|
| 1 | cases that you just referenced where you were the | 10:32:16 |
| 2 | person who designed the conjoint analysis survey? | 10:32:19 |
| 3 | A   So page six of the exhibit, Toya Edwards | 10:32:23 |
| 4 | versus Walmart. | 10:32:33 |
| 5 | As it happens, the next entry Montgomery | 10:32:38 |
| 6 | versus Stanley Black & Decker dba Craftsman. | 10:32:42 |
| 7 | Page eleven, Dashnaw versus New Balance. | 10:32:58 |
| 8 | Sorry, the prior page, Toby Schechner versus | 10:33:15 |
| 9 | Whirlpool. | 10:33:25 |
| 10 | Q   Sorry, page ten? | 10:33:26 |
| 11 | A   Yeah.  I'm trying to think of the others | 10:33:27 |
| 12 | that I mentioned to you.  I think -- I just gave you | 10:33:31 |
| 13 | four examples, plus there's the instant matter, so I | 10:33:34 |
| 14 | think that's it. | 10:33:38 |
| 15 | Q   I'm trying to find the -- on page ten what | 10:33:39 |
| 16 | is the name of the case? | 10:33:41 |
| 17 | A   It's the third caption from the bottom. | 10:33:42 |
| 18 | Q   Oh, Schechner versus Whirlpool? | 10:33:45 |
| 19 | A   Yes. | 10:33:49 |
| 20 | Q   Any other cases that you can recall as you | 10:33:50 |
| 21 | sit here today, where you were the one to design the | 10:33:56 |
| 22 | consult -- conjoint survey? | 10:34:02 |
| 23 | A   Again, there are numerous cases in which I | 10:34:06 |
| 24 | participated in the design.  But if you are going to | 10:34:10 |
| 25 | say where I was the primary author of the survey, | 10:34:12 |

Page 90

| | | |
|---|---|---|
| 1 | those are the ones that I can think of -- think of as | 10:34:13 |
| 2 | I sit here right now. | 10:34:15 |
| 3 | Q    Are you will aware in any of those cases | 10:34:17 |
| 4 | whether a court excluded your testimony based on the | 10:34:27 |
| 5 | analysis that you did -- the conjoint analysis that | 10:34:33 |
| 6 | you did? | 10:34:36 |
| 7 | A    I don't think I have an awareness of that | 10:34:38 |
| 8 | one way or the other. | 10:34:41 |
| 9 | Q    Are you aware whether or not a court in any | 10:34:42 |
| 10 | of those cases rejected your conjoint analysis and | 10:34:44 |
| 11 | did not certify the class in those cases -- any of | 10:34:49 |
| 12 | those cases? | 10:34:53 |
| 13 | A    In the Dashnaw matter, I know that the | 10:34:54 |
| 14 | parties resolved the case.  I don't think there was | 10:35:00 |
| 15 | ever any judicial commentary on the work. | 10:35:03 |
| 16 | The Craftsman and Walmart case are still | 10:35:07 |
| 17 | pending. | 10:35:11 |
| 18 | And the Schechner case, I know the judge | 10:35:12 |
| 19 | took issue with the conjoint analysis in that case. | 10:35:15 |
| 20 | But I don't know the present status of the case. | 10:35:17 |
| 21 | Q    What do you know about the Schechner case, | 10:35:20 |
| 22 | in terms of what the judge took issue about? | 10:35:23 |
| 23 | A    My primary recollection is that the judge | 10:35:26 |
| 24 | concluded that I had used arbitrary price points in | 10:35:30 |
| 25 | the survey rather than actual real world market base | 10:35:32 |

Page 91

| | | |
|---|---|---|
| 1 | price points. | 10:35:36 |
| 2 | Q    So, in effect, that you did not incorporate | 10:35:37 |
| 3 | supply side considerations in your analysis? | 10:35:51 |
| 4 | A    By virtue of having used arbitrary prices, | 10:35:53 |
| 5 | that would be my recollection of how the judge could | 10:35:58 |
| 6 | characterize the work. | 10:36:00 |
| 7 | Q    Okay.  So going back -- we'll get to that | 10:36:02 |
| 8 | in a bit. | 10:36:05 |
| 9 | But going back to your work in the last | 10:36:06 |
| 10 | four years, can you describe for me -- you've | 10:36:10 |
| 11 | described for me the situations where you were the | 10:36:16 |
| 12 | person who was primarily responsible for designing | 10:36:20 |
| 13 | the conjoint survey. | 10:36:24 |
| 14 | I want to ask you a broader question.  I | 10:36:29 |
| 15 | want to know which of these cases that are on your CV | 10:36:32 |
| 16 | involved work by you that involved conjoint analysis | 10:36:35 |
| 17 | in any degree. | 10:36:42 |
| 18 | So maybe if we can start at the first page | 10:36:44 |
| 19 | of your -- the cases which is page three and just | 10:36:47 |
| 20 | kind of rattle them off for me, if you would? | 10:36:50 |
| 21 | A    Sure.  So Prescod versus Celsius involved | 10:36:53 |
| 22 | conjoint.  The same, Willis versus Colgate.  Bechtel | 10:36:59 |
| 23 | versus SOLE Fitness.  Bailey versus Rite Aid. | 10:37:08 |
| 24 | Cardenas versus Toyota.  Milan versus CLIF.  Chamlin | 10:37:17 |
| 25 | versus J&J. | 10:37:27 |

Page 92

| | | |
|---|---|---|
| 1 | what you would be testifying to? | 11:50:20 |
| 2 | A    You mean on that initial call that we've | 11:50:23 |
| 3 | been talking about? | 11:50:25 |
| 4 | Q    Yes. | 11:50:26 |
| 5 | A    My best memory of that call would have | 11:50:27 |
| 6 | been, hey, Colin, there's a case I would like to talk | 11:50:30 |
| 7 | to you about with the team.  Can we schedule some | 11:50:34 |
| 8 | time in the coming week. | 11:50:36 |
| 9 | Something along those lines. | 11:50:37 |
| 10 | Q    Did Mr. Fisher advise you have any of | 11:50:38 |
| 11 | factual assumptions or other assumptions that -- | 11:50:43 |
| 12 | strike that. | 11:50:52 |
| 13 | Did you learn anything about the case in | 11:50:53 |
| 14 | that first call? | 11:50:55 |
| 15 | A    I think he would have told me the name of | 11:50:56 |
| 16 | the defendant so that I can could a conflict check | 11:51:00 |
| 17 | and probably provided me with a copy of the complaint | 11:51:03 |
| 18 | to look at so that I could be up-to-speed when we | 11:51:06 |
| 19 | jumped on the first call. | 11:51:10 |
| 20 | Q    And when you had -- when you jumped on a | 11:51:11 |
| 21 | call with your first call -- when you jumped on your | 11:51:14 |
| 22 | first call with the team -- I think you called them | 11:51:18 |
| 23 | the team -- were you already engaged by that point or | 11:51:20 |
| 24 | was that before you were engaged? | 11:51:25 |
| 25 | A    Again, I don't have the engagement in front | 11:51:28 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | of me, but I would assume that I was engaged at that | 11:51:31 |
| 2 | point. | 11:51:35 |
| 3 | Q    So, is it your recollection that you were | 11:51:45 |
| 4 | effectively engaged after the first conversation you | 11:51:47 |
| 5 | had with Mr. Fisher to work on the matter? | 11:51:50 |
| 6 | A    I would say effectively.  I don't remember | 11:51:54 |
| 7 | the exact timeline. | 11:51:56 |
| 8 | Q    Had you worked with Mr. Fisher in the past? | 11:52:00 |
| 9 | A    Yes. | 11:52:02 |
| 10 | Q    On how many occasions? | 11:52:03 |
| 11 | A    Mr. Fisher, maybe ten times. | 11:52:05 |
| 12 | Q    What about Mr. Fisher's firm? | 11:52:10 |
| 13 | A    More than that.  Probably twenty-ish times. | 11:52:13 |
| 14 | Q    So, if you look at your schedule of cases | 11:52:18 |
| 15 | that you gave testimony in the last four years, it | 11:52:22 |
| 16 | adds up to about 26 times. | 11:52:28 |
| 17 | Does that refresh your recollection as to | 11:52:30 |
| 18 | how many times you may have been engaged in the | 11:52:33 |
| 19 | past -- | 11:52:38 |
| 20 | A    I apologize, I didn't mean to speak over | 11:52:38 |
| 21 | you. | 11:52:42 |
| 22 | I think I said twenty-ish times, so I think | 11:52:43 |
| 23 | that was in the ballpark. | 11:52:47 |
| 24 | Q    What was the -- are you currently working | 11:52:49 |
| 25 | with Mr. Fisher's firm on any other matters? | 11:52:51 |

```
 1   call.                                               11:58:42

 2        Q    And you believe that that call occurred   11:58:48

 3   within a week or so of the 12-23-2019 time entry?   11:58:50

 4        A    Which call are we talking about?  You keep 11:58:55

 5   referring to calls but without sort of identifying  11:58:58

 6   what they are.                                      11:59:01

 7        Q    Yeah, I apologize.  The team call that you 11:59:02

 8   just testified to.                                  11:59:05

 9        A    That would have been -- well, as billed it 11:59:06

10   would have occurred during the week of 12-23.  So I 11:59:09

11   don't remember the precise date, but it would have  11:59:14

12   occurred in that time frame.                        11:59:16

13        Q    And prior to that call were you given any  11:59:18

14   documents to review?                                11:59:21

15        A    I can't state with certainty.  It's       11:59:22

16   possible that Mr. Fisher would have sent me the     11:59:25

17   complaint, but prior to the engagement I don't think 11:59:27

18   any other case documents would have been shared with 11:59:30

19   me.                                                 11:59:33

20        Q    I'm going back to your report and I know  11:59:33

21   that you prepared a lot of different reports.       11:59:50

22             Would it be accurate to say that many of  11:59:54

23   your reports follow the same general format?        11:59:58

24        A    We do have a particular style of          12:00:01

25   declaration in terms of the cover page and our logo 12:00:05
```

Page 137

1    Q    What is your understanding of plaintiffs'    12:02:55

2    liability -- excuse me plaintiffs' theory of    12:02:58

3    liability in this case?    12:03:02

4    A    At the highest level -- and I would    12:03:02

5    certainly let plaintiffs' own papers speak for    12:03:04

6    themselves, they allege that people bought    12:03:07

7    Fisher-Price Rock 'N Play sleepers, they paid a    12:03:10

8    retail price for those and that the products are, in    12:03:17

9    fact, valueless or basically in the alternative that    12:03:18

10   they were worth substantially less than the market    12:03:22

11   value of those products at the time of purchase.    12:03:26

12   Q    It's -- in preparing a damages analysis,    12:03:29

13   it's very important for you, as the expert, to    12:03:33

14   understand what plaintiffs' theory of liability is.    12:03:35

15        Would you agree with that?    12:03:39

16   A    The level of importance has certainly    12:03:40

17   changed over time.  But I would presently say, yes,    12:03:42

18   one of the first thing I do is ask a client to    12:03:46

19   present to me or give me a complaint or something    12:03:49

20   else that elucidates the theory of liability, so I    12:03:51

21   can think about that.    12:03:56

22   Q    And the theory of liability that you just    12:03:57

23   articulated, where did you get that information from?    12:04:01

24   A    Probably a combination of the complaint and    12:04:05

25   my discussions with counsel.    12:04:09

| | | |
|---|---|---|
| 1 | Q    What is your understanding of why the | 12:04:16 |
| 2 | product is valueless? | 12:04:18 |
| 3 | A    That there is a risk of infant mortality | 12:04:20 |
| 4 | and other injury from the use of the product. | 12:04:23 |
| 5 | Q    What use of the product creates risk of | 12:04:27 |
| 6 | mortality according to plaintiffs' theory in the | 12:04:38 |
| 7 | case? | 12:04:42 |
| 8 | A    If are you talking about what the | 12:04:43 |
| 9 | plaintiffs allege, I believe that there is no safe | 12:04:48 |
| 10 | use that they would support for this particular | 12:04:50 |
| 11 | product. | 12:04:53 |
| 12 | Q    So is it your understanding that | 12:04:53 |
| 13 | plaintiffs' theory of liability in this case is that | 12:04:56 |
| 14 | the product is unsafe for all uses? | 12:04:58 |
| 15 | A    Yes. | 12:05:00 |
| 16 | Q    And your understanding of that is based on | 12:05:00 |
| 17 | your conversations with counsel in reading the | 12:05:09 |
| 18 | complaint? | 12:05:11 |
| 19 | A    Correct. | 12:05:12 |
| 20 | Q    Have you reviewed any other documents to | 12:05:12 |
| 21 | articulate your understanding of what you believe | 12:05:14 |
| 22 | plaintiffs' theory of the case is? | 12:05:18 |
| 23 | A    Not that I recall. | 12:05:20 |
| 24 | Q    You are not here today -- you are not here | 12:05:23 |
| 25 | today to opine as to whether or not plaintiffs' | 12:05:34 |

Page 141

| | | |
|---|---|---|
| 1 | A    Not particularly one way or the other. | 13:02:06 |
| 2 | Q    Did you review any of the deposition | 13:02:08 |
| 3 | transcripts of Fisher-Price employees? | 13:02:10 |
| 4 | A    Not that I recall. | 13:02:14 |
| 5 | Q    Do you know whether any Fisher-Price | 13:02:16 |
| 6 | employees have been deposed? | 13:02:20 |
| 7 | A    I think I was aware just from chitchat with | 13:02:24 |
| 8 | counsel that there were 30(b)(6) witnesses being | 13:02:30 |
| 9 | deposed. | 13:02:34 |
| 10 | Q    Was any of the substance of the -- of any | 13:02:34 |
| 11 | of the depositions ever disclosed -- strike that. | 13:02:38 |
| 12 | Was any of the substance of any of the | 13:02:40 |
| 13 | testimony of any of the Fisher-Price witnesses ever | 13:02:43 |
| 14 | disclosed to you? | 13:02:44 |
| 15 | A    I think I heard that what I had assumed | 13:02:45 |
| 16 | about some underlying data from Fisher-Price and the | 13:02:52 |
| 17 | sales of the products that my understanding of it was | 13:02:54 |
| 18 | confirmed by one of those witnesses. | 13:02:57 |
| 19 | Q    Can you elaborate on that?  What data are | 13:03:01 |
| 20 | you referring to? | 13:03:03 |
| 21 | A    I don't remember the precise Bates number, | 13:03:05 |
| 22 | but one of the Fisher-Price documents has a pretty | 13:03:08 |
| 23 | detailed outline of the ongoing sales of the | 13:03:11 |
| 24 | products.  And again, I had a pretty good feeling | 13:03:16 |
| 25 | about what it was that the 30(b)(6) witness to the | 13:03:19 |

| | | |
|---|---|---|
| 1 | best of my recollection had confirmed my | 13:03:24 |
| 2 | understanding of the data. | 13:03:26 |
| 3 | Q   And in terms of the ongoing sales of the | 13:03:26 |
| 4 | product what are you referring to? | 13:03:30 |
| 5 | A   Sales by time and by SKU of the challenged | 13:03:31 |
| 6 | products. | 13:03:36 |
| 7 | Q   Other than the sales information which you | 13:03:39 |
| 8 | just testified to, were you provided any information | 13:03:42 |
| 9 | regarding any testimony given by any Fisher-Price | 13:03:48 |
| 10 | employee? | 13:03:52 |
| 11 | A   Would you ask the question again, please, I | 13:03:52 |
| 12 | just missed part of it? | 13:03:54 |
| 13 | Q   Sure. | 13:03:57 |
| 14 | Other than the sales information which you | 13:03:58 |
| 15 | just testified, were you given any information | 13:04:00 |
| 16 | regarding the substance of any testimony given by any | 13:04:02 |
| 17 | Fisher-Price employee? | 13:04:06 |
| 18 | A   Not to the best of my recollection. | 13:04:06 |
| 19 | Q   Prior to preparing your report, have you | 13:04:08 |
| 20 | reviewed any consumer reviews on the product? | 13:04:17 |
| 21 | A   Again, not to the best of my recollection. | 13:04:21 |
| 22 | Q   Prior to preparing your report, did you | 13:04:25 |
| 23 | review any blog posts regarding the product? | 13:04:27 |
| 24 | A   I don't think so, no. | 13:04:32 |
| 25 | Q   Is there any other material you think would | 13:04:33 |

Page 180

1   have been helpful for you in preparing the report        13:04:36

2   that you did not receive?                                13:04:40

3        A    I guess I don't know what's out there but I    13:04:41

4   was very comfortable making the opinions that I have     13:04:48

5   made and set forth in the report based upon the          13:04:51

6   present record.  Obviously, as I stated in the report    13:04:54

7   if there any new or additional information comes to      13:04:56

8   light I will happily consider it.                        13:05:00

9        Q    Did you review plaintiff's motion for class    13:05:03

10  certification prior to it being filed?                   13:05:06

11       A    I don't think so, no.                          13:05:08

12       Q    Have you read it before today?                 13:05:09

13       A    I'm not even sure I've read it today.          13:05:12

14  Well, I know I haven't read it today.  I'm not even      13:05:14

15  sure I have read it as of today.                         13:05:19

16       Q    Yeah, that actually was my question.  Sorry    13:05:20

17  if it faded out.  But my question was initially prior    13:05:23

18  to the filing of plaintiff's motion for class            13:05:26

19  certification did you review it?                         13:05:32

20       A    Again that one I answered.  I don't believe    13:05:34

21  so, no.                                                  13:05:36

22       Q    And as of today have you reviewed             13:05:36

23  plaintiff's motion for class certification?              13:05:39

24       A    Not to my recollection.                        13:05:42

25       Q    Were you provided any assumptions by           13:05:44

Page 181

```
 1   BY MR. KANNY:

 2        Q    We'll get more into that in a second.      13:17:02

 3             Would you agree that the full refund theory 13:17:04

 4   is only appropriate if the product has no value to   13:17:06

 5   all of the class members?                            13:17:09

 6        A    I'm not sure I would phrase it that way.    13:17:13

 7   First of all, I would say one incidence in which I    13:17:16

 8   understand that the full refund method would be       13:17:19

 9   appropriate would be when that product has no market  13:17:24

10   value.  So again, I'm not looking at the subjective   13:17:27

11   feelings of class members but rather at the objective 13:17:30

12   market value of the product.                          13:17:34

13             I believe -- I'm not a lawyer but I have    13:17:35

14   been told that there are other circumstances where    13:17:38

15   the law could present the opportunity for a full      13:17:40

16   refund, but again, I'm not looking at any individual  13:17:45

17   consumer's subjective feelings about the product.     13:17:48

18        Q    Please define the objective market value as 13:17:51

19   you just stated.                                      13:17:57

20        A    That's typically equated with the market    13:17:57

21   price.                                                13:18:02

22        Q    And what is the market price based upon?    13:18:02

23        A    It depends on the product.  It depends on   13:18:06

24   the market.                                           13:18:10

25        Q    Would you agree that a market price is the  13:18:10
```

Page 190

1    intersection between the demand curve and the supply    13:18:16
2    curve?    13:18:23
3        A    It's generally not.    There are only the    13:18:23
4    rarest of circumstances where the price is pushed to    13:18:26
5    that "X" marks the spot interaction of supply and    13:18:29
6    demand.    13:18:32
7        Q    When -- in what circumstances is it pushed    13:18:35
8    to that point?    13:18:38
9        A    I'm aware only of the circumstance of    13:18:39
10    perfect competition, which exists only in economic    13:18:43
11    textbooks and to my knowledge never in the real    13:18:48
12    world.    13:18:53
13        Q    Have you seen any evidence to support the    13:19:00
14    conclusion that the Rock 'N Play sleeper was    13:19:03
15    valueless to all class members ?    13:19:12
16        A    Again, I haven't been asked to make a    13:19:14
17    determination about whether there was or was not    13:19:16
18    market value.  So when I say I haven't seen evidence    13:19:19
19    about that it's not there there's an absence of    13:19:22
20    evidence per se, just that I haven't sought out such    13:19:26
21    evidence because it was beyond the scope of my    13:19:29
22    report.    13:19:32
23        Q    Can you look at paragraph nine for me, the    13:19:32
24    first sentence.  And for record, I'll read it.    13:19:36
25        This is of your report and it says,    13:19:38

Page 191

```
 1   could never be eliminated -- eliminated?        13:27:53

 2        MR. FISHER:  Object to form.              13:27:59

 3        THE WITNESS:  Again, it's my understanding 13:28:02

 4   that plaintiff's allege that the risks are inherent 13:28:04

 5   in the product.  I don't know whether they are saying 13:28:08

 6   that you could ameliorate those risks, for example, 13:28:11

 7   by rebuilding or reconstructing the Rock 'N Play. 13:28:15

 8   BY MR. KANNY:                                   13:28:18

 9        Q   Are you planning on doing any analysis to 13:28:23

10   determine if the Rock 'N Play is valueless to all 13:28:27

11   class members?                                  13:28:32

12        A   I have not been asked to assist in that 13:28:34

13   task.  If I was asked to do it I would at least 13:28:37

14   consider taking the assignment but at this point I 13:28:40

15   have no plans to do that type of analysis, the sort 13:28:45

16   of liability work if you were.                  13:28:48

17        Q   Do you know whether any of the babies of 13:28:50

18   the class -- putative class members have actually 13:28:53

19   been injured in using the Rock 'N Play sleeper? 13:28:57

20        A   I know that injury and death has certainly 13:29:00

21   been tied to use of the Rock 'N Play.  Whether any of 13:29:08

22   them are named plaintiffs, I don't know.  I think by 13:29:11

23   virtue of the class definition at least some of them 13:29:14

24   would be part of the class.                     13:29:18

25        Q   Under your full refund theory if a consumer 13:29:20
```

Page 199

```
 1    of a Rock 'N Play sleeper sold at Walmart is      13:51:51

 2    comparable to the price of a Rock 'N Play sleeper at  13:51:54

 3    Best -- buybuy BABY, are you?                     13:51:58

 4        A   It would depend.  They may be comparable,  13:51:59

 5    they may not be.  But since we're looking in the  13:52:03

 6    aggregate we can make that estimation that will allow  13:52:06

 7    for the differences in retailers to exist.        13:52:09

 8        Q   So if buybuy BABY was selling a Rock 'N   13:52:11

 9    Play sleeper for $150 and Walmart was selling a Rock  13:52:17

10    'N Play sleeper for $29 your methodology would be a  13:52:23

11    simple average of the two?                        13:52:27

12        A   My methodology would be to try and        13:52:29

13    determine the total amount that consumers spend on  13:52:33

14    the products, which would reflect the price that was  13:52:37

15    paid at buybuy BABY and the price that was paid at  13:52:39

16    Walmart.                                          13:52:44

17        Q   And well under your full refund theory what  13:52:44

18    would the putative class member be entitled to?    13:52:49

19        A   I can't speak to what any one person would  13:52:51

20    be entitled to.  What I can say is that under the  13:52:55

21    full refund method the total amount spent at retail  13:52:55

22    subject to the class definition would be what would  13:52:55

23    be the aggregate class-wide damages.               13:52:57

24        Q   Right.  But as you sit here today, you have  13:53:01

25    no methodology in mind for how one would compensate  13:53:04
```

Page 218

```
 1    individual putative class members?                13:53:11

 2         A    Because the individual compensation of   13:53:13

 3    putative class members doesn't impact the aggregate 13:53:16

 4    calculation of harm caused by the defendant and    13:53:20

 5    because I haven't been asked to figure out a claims 13:53:22

 6    administration regime I have not laid forth such a  13:53:25

 7    method.                                            13:53:29

 8         Q    Okay.  So if I look in your report I     13:53:29

 9    wouldn't find any methodology?                     13:53:32

10         A    Same answer.                             13:53:38

11         Q    Does your -- for the full refund theory  13:53:39

12    does your methodology take into account past refunds? 13:53:51

13         A    I'm sorry, say that one more time, please. 13:53:58

14         Q    Sure.                                    13:54:00

15              Does your full refund calculation take into 13:54:01

16    account past refund calculation taking into account 13:54:08

17    past refunds?                                      13:54:11

18         A    Yes, we would be looking to determine the 13:54:11

19    aggregate net sales to the class.                  13:54:12

20         Q    And in the data that you have do you have 13:54:13

21    the information that would allow you to take out from 13:54:15

22    that past refunds?                                 13:54:18

23         A    I believe I do have net sales statistics. 13:54:20

24         Q    What about discounts provided on the     13:54:26

25    purchase of the products?                          13:54:37
```

Page 219

```
 1    consumers.                                      15:28:11
 2        Q    When will you make a decision as to which   15:28:11
 3    attributes you will, in fact, use?             15:28:27
 4        A    Barring further evidence these are the     15:28:28
 5    attributes that will be used.  I do describe that   15:28:31
 6    there is a process by which the survey vetted through  15:28:34
 7    cognitive interviews and exploratory research.  And I  15:28:38
 8    understand that discovery in this case has been    15:28:41
 9    bifurcated and is ongoing.                     15:28:45
10            So I would always suggest to the court that   15:28:49
11    I want to get this right and if information comes to
12    light that would suggest a change in the survey, I
13    would do that but if the judge said this all looks   15:28:52
14    good, let's go tomorrow I would use these attributes.  15:28:55
15        Q    Have you done any pre -- have you done any   15:28:59
16    exploratory research today?                    15:29:04
17        A    No, I have not but as I have said in the   15:29:08
18    appendix I would guaranty that that would be part of   15:29:12
19    my process of taking this survey to the field.   15:29:15
20        Q    And so as you said while you would use    15:29:17
21    these attributes those are based on what you know now  15:29:21
22    and not what you've done in connection with     15:29:24
23    exploratory research that as I think you say here,   15:29:29
24    would inform you as to what product attributes to   15:29:32
25    include in the survey; correct?               15:29:35
```

Page 275

```
 1        A    When I have experience of doing careful        15:29:38

 2    conjoint design whether by myself or with other folk,   15:29:42

 3    it is often the case that a carefully designed          15:29:47

 4    conjoint as I have set forth here will experience few   15:29:50

 5    or no changes as a result of the exploratory research   15:29:54

 6    that confirms the careful research that was done        15:29:56

 7    before.                                                 15:30:00

 8          But if there is something that sticks out         15:30:01

 9    from the exploratory research that would suggest that   15:30:02

10    it be prudent to make a change then I would, of         15:30:05

11    course.  Follow that prudence.                          15:30:09

12        Q    You do say though in paragraph 16 that as a    15:30:10

13    result of these interviews, quote, "I would gain a      15:30:14

14    better understanding of the drivers of consumer         15:30:17

15    choices"; correct?                                      15:30:20

16        A    I guess it would be more accurate to say       15:30:21

17    that either I would learn something or my prior         15:30:23

18    knowledge would be confirmed.                           15:30:26

19        Q    Just curious, have you in the course of        15:30:28

20    your work to date spoken with any user of the Rock 'N   15:30:42

21    Play sleeper?                                           15:30:46

22        A    Not knowingly and/or not about the Rock 'N     15:30:46

23    Play.                                                   15:30:48

24        Q    Have you spoken with any of the plaintiffs     15:30:48

25    in this case?                                           15:30:51

                                                      Page 276
```

1      A    Again, not knowingly.                         15:30:51

2      Q    Have you spoken with -- strike that.          15:30:55

3           Do you have kids?                             15:31:04

4      A    Yes.                                          15:31:04

5      Q    How old are your kid?                         15:31:05

6      A    I have one son who's almost five.             15:31:07

7      Q    Are you a user of a Rock 'N Play sleeper?     15:31:10

8      A    No, never have been.                          15:31:13

9      Q    Excuse me, that would be hard for you to be   15:31:15

10    a user of it.                                       15:31:19

11          Was your son ever -- did you ever purchase    15:31:20

12    or use a Rock 'N Play sleeper for your son?         15:31:22

13     A    No.                                           15:31:24

14     Q    Did you have any knowledge of -- of the       15:31:25

15    Rock 'N Play Rock 'N Play sleeper product prior to  15:31:31

16    this case?                                          15:31:34

17     A    I don't believe so, no.                       15:31:34

18     Q    Have you talked to your wife about the Rock   15:31:35

19    'N Play sleeper?                                     15:31:41

20     A    Only at the highest level when I described    15:31:41

21    what the case was about when she asked what I was   15:31:45

22    being deposed about last night.                     15:31:49

23     Q    And has she ever heard of the Rock 'N Play    15:31:51

24    sleeper product?                                    15:31:56

25     A    I didn't ask but she didn't indicate that    15:31:56

                                            Page 277

```
 1    the bottom, which is again standard procedure in        15:51:49

 2    conjoint.                                                15:51:52

 3        Q   And you'd agree with me wouldn't you that       15:51:52

 4    the safety warning here that you're using should be     15:51:54

 5    consistent with the plaintiff's theory of liability;    15:51:57

 6    correct?                                                 15:52:03

 7        A   I agree that it should be and based on my        15:52:03

 8    discussions with plaintiffs it would be but again I     15:52:05

 9    would assure the court that if they believe there's     15:52:09

10    alternate language that would be more appropriate to    15:52:12

11    test that I can make a change to the design before      15:52:16

12    the survey is fielded.                                   15:52:18

13        Q   Are you aware of any other products used        15:52:19

14    for infant sleep -- well, strike that.                  15:52:22

15            Does your full refund theory assume that        15:52:49

16    purchasers of the Rock 'N Play sleeper had no           15:52:54

17    awareness of any alleged safety issues relating to     15:52:59

18    the product at the time they purchased it?              15:53:05

19        A   I'm not making an assumption about that one     15:53:07

20    way or the other.                                        15:53:12

21        Q   Is that important for your analysis under       15:53:13

22    the full damages model?                                  15:53:16

23        A   Not based on plaintiff's stated theory of      15:53:19

24    liability.                                               15:53:21

25        Q   Do you know what the actual warning label      15:53:21
```

Page 290

# ⫶Ti ECONOMICS AND TECHNOLOGY, INC.

COLIN B. WEIR
VICE PRESIDENT

ONE WASHINGTON MALL, 7TH FLOOR
BOSTON, MASSACHUSETTS 02118
Telephone (617) 598-2226
Mobile (617) 598-2225
Email: cweir@econtech.com

April 8, 2021

Lynda L. Fenn
c/o Demet Basar, Esq.
Beasly Allen Law Firm
218 Commerce Street
Montgomery, AL 36104

*In re: Fisher Price Rock 'N Play Sleeper Marketing; March 11, 2021 Deposition of Colin B. Weir*

Ms. Fenn:

Attached, please find the errata sheet to my March 11, 2021 deposition transcript.

Kind regards,

Colin B. Weir

April 8, 2021
Page 2 of 4

| Cite | Original | Errata | Reason Code |
|------|----------|--------|------|
| 8:25 | meet | make | 1 |
| 12:2 | loss | lost | 1 |
| 12:10 | , two | II | 1 |
| 13:6 | tries | trials | 1 |
| 13:9 | , one | I | 1 |
| 13:10 | two | II | 1 |
| 13:13 | two | II | 1 |
| 13:24 | one | I | 1 |
| 31:7 | guaranty | guarantee | 1 |
| 34:21 | suit | suite | 1 |
| 39:4 | 1999 | 2009 | 1 |
| 42:15-16 | schoolwork that's involved in | school worth its salt is | 1 |
| 48:4 | advance | advanced | 1 |
| 48:13 | If the | The | 1 |
| 50:9 | when | what | 1 |
| 50:15 | ads | paths | 1 |
| 51:11 | at levels | and levels | 1 |
| 52:12 | design | designed | 1 |
| 52:21 | base | Bayes | 1 |
| 53:7 | phrase | phase | 1 |
| 56:19 | advance classes | advanced class | 1 |
| 59:7 | taking break | taking a break | 1 |
| 63:1 | aught | aughts | 1 |
| 72:23 | aught | aughts | 1 |
| 73:2 | here, "As of 3-9-2021, for | here as of 3-9-2021, "For | 1 |
| 78:11-12 | are you | you are | 1 |
| 84:18 | guess | guessed | 1 |
| 85:6 | Yes | No | 1 |
| 91:25 | base | based | 1 |
| 94:22 | once | ones | 1 |
| 100:7 | John | Jon | 1 |
| 100:12 | McMarrow | McMorrow | 1 |
| 102:20 | did | do | 1 |
| 103:4 | Betty | Betsy | 1 |
| 104:6 | Byron | Behrend | 1 |
| 114:11 | affixed | a fixed | 1 |
| 114: 12 | base | based | 1 |
| 114:14 | arbitrarily | arbitrary | 1 |
| 116:2 | primary | primarily | 1 |
| 118:11 | that used | that was used | 1 |

April 8, 2021
Page 3 of 4

| | | | |
|---|---|---|---|
| 121:19 | 17 | 13 | 1 |
| 130:16 | could a | could run a | 1 |
| 146:4 | generalizations | generalization | 1 |
| 147:17 | refer | defer | 1 |
| 156:14 | can' | can't | 1 |
| 159:14 | 20201 | 2021 | 1 |
| 164:3 | I'll | I'm | 1 |
| 165:14 | challenge | challenged | 1 |
| 168:23 | "What | "When | 1 |
| 171:25 | report in | report and | 1 |
| 173:5 | in | and | 1 |
| 175:6 | that their primarily | that as their primary | 1 |
| 179:25 | that | but | 1 |
| 181:7 | there any | there is any | 1 |
| 189:2 | their | there are | 1 |
| 194:11 | first | for | 1 |
| 194:21 | "haven't | "shoudn't have | 1 |
| 194:22 | be | lead | 1 |
| 198:3 | sold in | sold, were in | 1 |
| 202:8 | expanse | extant | 1 |
| 206:18 | faceted | facile | 1 |
| 217:5 | as memory-wise | as a memory quiz | 1 |
| 218:13 | spend | spent | 1 |
| 221:24 | class by | class-wide | 1 |
| 224:13 | Eubanks | Eubank | 1 |
| 224:17 | 340 | 349 | 1 |
| 230:19 | speak or | speak for | 1 |
| 233:3 | ongoing | conjoint | 1 |
| 241:2 | marketplace I | market price I | 1 |
| 242:8 | withdraws | draws | 1 |
| 242:9 | work to | worth | 1 |
| 245:5 | are on conjoint analysis | run conjoint analyses | 1 |
| 245:5 | having | have | 1 |
| 246:9 | bases | basis | 1 |
| 257:7 | continued | contingent | 1 |
| 260:6 | was | would | 1 |
| 261:15 | Byron | Behrend | 1 |
| 268:1 | conduct | conduct would | 1 |
| 272:15 | inti | into | 1 |
| 275:6 | survey vetted | survey is vetted | 1 |
| 275:18 | guaranty | guarantee | 1 |
| 295:3 | know see | see | 1 |

April 8, 2021
Page 4 of 4

| 298:20 | conjoin | conjoint | 1 |
| 298:22 | review that a | view that as | 1 |
| 303:5 | CDW | CBW | 1 |

1= Transcription error, 2=Clarification, 3=Conform to Facts