UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: FISHER-PRICE ROCK 'N PLAY SLEEPER MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 1:19-md-2903<br><br>This Document Relates To: ALL CASES |

**ORDER ON MOTION TO DISMISS FOR LACK OF STANDING (Doc. 271)**

Defendants seek dismissal of the New York class action on standing grounds. The court previously issued a decision certifying an "issues class" on some but not all liability issues. (Docs. 254, 260.) The court identified causation for purposes of NY GBL § 349 as well as damages as subject to individual proof. (Doc. 254 at 19–27.) The court also noted that Defendants intended to challenge the standing of Plaintiffs' sole New York class representative, Elizabeth Alfaro. (Doc. 260 at 6–7.)

Defendants return to these issues with a motion to dismiss on the ground that Ms. Alfaro is a satisfied customer who suffered no loss—even if Plaintiffs establish at trial that the Rock 'n Play Sleeper ("RNPS") was marketed by means of false statements. (*See* Doc. 271-1.) Plaintiffs respond that Ms. Alfaro's injury occurred when she overpaid for the RNPS, believing that it was safe for infant sleep, and that statutory damages, however nominal in amount, are sufficient to confer standing on a consumer. (*See* Doc. 284.) The court has considered Defendants' reply memorandum (Doc. 285) and the parties' supplemental filings (Docs. 292, 294) regarding the recent decision in *In re Evenflo Co. Marketing, Sales Practices & Products Liability Litigation*, 54 F.4th 28 (1st Cir. 2022).

## FACTS

The court starts with the facts relied upon by both sides regarding standing. It is helpful that these are simple and not in dispute.

Ms. Alfaro is the mother of several children. In September 2017, she or her husband—it makes no difference here—purchased an RNPS for her newborn son for $50 at a Target store. Ms. Alfaro placed the little boy in the RNPS for half of his daytime naps and 75–80% of his overnight sleep during the first six months of his life. The child suffered no ill consequences from sleeping in the RNPS and appears to have enjoyed it. He was followed by a little sister. She did not enjoy sleeping in the RNPS and did not use the product much during her infancy.

In April 2019, Ms. Alfaro learned about the recall of the RNPS supervised by the Consumer Product Safety Commission. She participated in the recall and received a plush child's toy. Defendants placed a value of $30 on the toy. Ms. Alfaro's children did not like to play with the toy. Ms. Alfaro seeks a refund of the full price her family paid for the RNPS.[1]

## Rule 12(b)(1) Standard

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it . . . .'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Such jurisdiction is lacking where constitutional (Article III) standing is absent. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016). "[S]tanding must be assessed as to each plaintiff . . . ." *Seife v. U.S. Dep't of Health & Human Servs.*, 440 F. Supp. 3d 254, 272 (S.D.N.Y. 2020). This

---

[1] These facts are summarized in similar fashion by both sides. (*See* Doc. 271-1at 9–11; Doc. 284 at 5–6.)

is also true in class actions: "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Every class member must have Article III standing in order to recover individual damages."). Plaintiffs have the burden of showing Ms. Alfaro's standing. *Soule ex rel. Stanescu v. Conn. Ass'n of Schs., Inc.*, 57 F.4th 43, 50 (2d Cir. 2022). Here, Defendants' motion is "fact-based" in that Defendants rely on evidence beyond the pleadings. *Carter*, 822 F.3d at 57. Plaintiffs opposing a fact-based Rule 12(b)(1) motion "need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (alteration in original) (quoting *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). Here, as noted above, there are no significant disputes regarding the facts relevant to the standing analysis.

## ANALYSIS

Standing is legal shorthand for the constitutional requirement that plaintiffs in a civil lawsuit prove that they have suffered an injury-in-fact that is fairly traceable to the conduct of the defendant and likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–43 (2016); *Soule*, 57 F.4th at 50. The injury must be concrete in the sense that it actually exists and is not abstract. It must also be particular in the sense that it affected the plaintiff in a personal and individual way and does not represent a generalized grievance common to all members of the public. *Spokeo*, 578 U.S. at 339. In the absence of a concrete,

particularized injury, a lawsuit fails to meet the case or controversy requirement of Article III of the Constitution. Federal courts lack jurisdiction to hear cases which do not meet this standard.

The court begins by identifying the injury that Ms. Alfaro claims.

Through counsel, Ms. Alfaro describes her injury as being misled into purchasing the RNPS by false statements about safety. "[She] purchased a Rock 'n Play Sleeper . . . for her child, but she would not have purchased it at all, or would have paid less for it, had Defendants' deceptive marketing not occurred." (Doc. 284 at 1.) In Ms. Alfaro's view, the injury occurred when she was duped into purchasing an unsafe product. Later events such as satisfactory use of the RNPS during her son's early months or the value she received through the recall are "[a]t best for Defendants . . . a question of offset for the jury." (*Id.* at 7.)

Defendants contend that Ms. Alfaro has suffered no injury-in-fact because she was satisfied with the product while she used it—going so far as to recommend it to others—and had no plans to resell at a loss. In Defendants' view, "she lost no value as a result of the alleged deceptive statements, and therefore has not suffered any concrete injury that would give her standing to assert her GBL § 349 claim." (Doc. 271at 14.) Defendants characterize the court's class certification ruling as establishing that Ms. Alfaro cannot establish a financial loss or other injury at trial.

The court concludes that Ms. Alfaro has alleged a concrete and particularized injury sufficient to establish standing. Here is why.

The court agrees with Ms. Alfaro that a false advertising claim accrues when the consumer purchases a product as a result of a material misrepresentation. *See Bristol Vill., Inc. v. Louisiana-Pacific Corp.*, 170 F. Supp. 3d 488, 498 (W.D.N.Y. 2016) (claim under GBL § 349 accrued at the time allegedly defective product was purchased, delivered, and installed); *Statler*

*v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) (claim under GBL § 349 accrued at the time that allegedly faulty computers were delivered); *Brady v. Lynes*, No. 05 Civ. 6540(DAB), 2008 WL 2276518, at *10 (S.D.N.Y. June 2, 2008) (claim under GBL § 349 accrued at the time that the plaintiff purchased counterfeit Georgia O'Keeffe painting).

Defendants observe—correctly—that *Bristol Village*, *Statler*, and *Brady* did not involve or analyze Article III standing. And the time that a claim "accrues" for statute-of-limitations purposes is not necessarily the same as the time that a claimant is "injured" for Article III purposes. *See In re Joint E. & S. Dist. Asbestos Litig.*, 129 B.R. 710, 836 (E. & S.D.N.Y. 1991) ("The policy reasons behind statute of limitations periods do not govern whether a party has a case or controversy within Article III."), *vacated on other grounds*, 982 F.2d 721 (2d Cir. 1992). But the particular injury that Ms. Alfaro alleges in this case—overpayment for the RNPS—occurred at the time of purchase.

Overpayment for product—"even one that performs adequately and does not cause any physical or emotional injury"—can be a cognizable injury-in-fact. *Evenflo*, 54 F.4th at 35. "Multiple Second Circuit decisions have determined that plaintiffs had standing based on overpayment due to a defendant's false or misleading statements." *Id.* at 36 (citing cases). Defendants correctly observe that each of the exemplar Second Circuit cases that the *Evenflo* court cited can be described as "price premium" cases. *See Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 703–04 (2d Cir. 2020) (summary order) (finding that plaintiff "suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury—paying a premium—as a result"); *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92 (2d Cir. 2018) (named plaintiff had standing because she alleged that she paid a premium for baby products represented as "natural"); *John v. Whole Foods Mkt. Grp, Inc.*,

858 F.3d 732, 738 (2d Cir. 2017) (plaintiff plausibly alleged that he suffered injury in fact by pleading the frequency of his purchases and the systematic overcharging of products).

Defendants contend that *Evenflo*'s citation to these "price premium" cases means that *Evenflo* is inapplicable in this case based on this court's prior statement that "this is not a 'price premium' case in which all consumers overpaid as a result of a false claim about the product." (Doc. 254 at 22.) In Defendants' view, the court's June 2022 Order held "that no injury occurred at the time of purchase." (Doc. 285 at 10 n.7.) The court disagrees; the prior order did not so hold.

In the June 2022 Order, the court reasoned that "[t]he sale of a product that is so dangerous that it is removed from the market once the danger is known causes economic loss to consumers" but that the loss "is not distributed evenly across all purchasers at the time of purchase as in the case of a 'price premium.'" (Doc. 254 at 23.) "Instead, the resulting loss to consumers varies depending on the timing of the purchase, the period of use, and discard or resale of the Sleeper after the baby outgrows it." (*Id.*) That reasoning does not mean that "price premium" cases are totally irrelevant to the standing analysis in this case. Nor does the reasoning in the prior order conflict with the conclusion that Ms. Alfaro's injury occurred at the time of purchase. To the contrary, the court recognized that RNPS consumers might have incurred a loss at the time of purchase but that the *amount* of the loss ultimately depends on a number of factors, including events that occurred after the purchase. It is in that narrow sense that this case differs from a "price premium" case where each consumer overpaid by the same amount.

In this case, Ms. Alfaro claims that she would never have bought the RNPS if she had known about the risk of infant death. That is a view that every new parent would share. As the

court previously observed, there is no market for childcare products discounted to reflect the risk of death or injury. A jury could well believe Ms. Alfaro if she testifies that she or her husband would never have purchased the RNPS if Defendants had disclosed what they knew about the risk of infant death.[2]

The case does not end at the point of purchase. The defendants are entitled to introduce evidence of Ms. Alfaro's positive experiences with the RNPS and whatever offset they can establish through the receipt of the plush toy. These may reduce the damages to zero or a jury may give them less weight. But that is a factual dispute over the amount of the damages. Evidence that Ms. Alfaro obtained value from using the RNPS does not alter the original claimed injury of $50 for a purchase that she states she would not have made if Defendant's promotion of the product had been truthful. The court will leave for trial the parties' dispute over whether the damages are $50 or zero or some figure in between. In the court's view, Ms. Alfaro's allegations that she was misled into purchasing the RNPS are sufficient to establish standing for jurisdictional purposes.

---

[2] Defendants suggest in their reply memorandum that New York courts have consistently rejected the argument that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999). *Small* is distinguishable because the plaintiffs in that case did not allege that the price of the products was affected by the alleged misrepresentation. *Id.* at 56. In contrast, Ms. Alfaro *does* allege that the alleged misrepresentations affected the price of the RNPS. (Doc. 19 ¶ 298.)

## Conclusion

Defendants' Motion to Dismiss for Lack of Standing (Doc. 271) is DENIED.

Dated this 8th day of February, 2023.

/s/ Geoffrey W. Crawford
Judge, United States District Court